IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DALLAS ROOF GARDENS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 3:07-CV-696-O |
| | § | ECF |
| **THE CITY OF DALLAS TEXAS,** *et al.,* | § | |
| | § | |
| **Defendants.** | § | |

**OPINION**

Before the Court is a Motion for Summary Judgment or for Judgment on the Pleadings (Doc. # 47) filed July 9, 2009 ("Motion" or "Defs. Mtn.") by Defendants the City of Dallas (the "City") and the Reinvestment Zone Five Board, City Center (the "City Center TIF Board of Directors" or "TIF Board").

Having considered this motion, related briefing, the applicable law, and, where appropriate, relevant evidence, the Court finds that Defendant's Motion should be and is hereby **GRANTED** in part and **DENIED** in part.

**I.       Background**

**A. Factual Background**

Plaintiff Dallas Roof Gardens, Inc. ("DRG") is a Texas corporation whose sole shareholder is Obi Ibeto, a black Nigerian national. *Plaintiff's First Amended Complaint* ("Amd. Compl.")(Doc. #4) at 5. Plaintiff's Amended Complaint alleges claims for violation of its civil rights based on the Dallas City Council's (the "City Council") denial of Plaintiff's request for an extension of a contract for partial funding, in the amount of approximately $975,000.00, for

1

Plaintiff's downtown Dallas renovation project.  *Id.* at 8.

Plaintiff applied for tax increment financing[1] ("TIF") from the City of Dallas (the "City") to help finance the renovation of a building in downtown Dallas at 1217 Main Street.  *Id.* at 7. On June 6, 2003, the TIF Board, which provides recommendations to the City Council on TIF proposals, recommended that the City Council authorize the use of funds for Plaintiff's project. *City Council Resolution dated June 25, 2003*, Exhibit A to *Amd. Compl.*  On June 25, 2003, the City Council passed a resolution authorizing the City to enter into a TIF financing contract with Plaintiff.  *Id.*  On July 2, 2004, Plaintiff and the City entered into a contract whereby the City would purchase a facade beautification easement in Plaintiff's building for approximately $975,000.00, conditioned on Plaintiff's fulfillment of certain obligations.  *Amd. Compl.* at 8; *Purchase and Sale Agreement with Dallas Roof Gardens* at 4–6, Exhibit A to *Amd. Compl.*  One of the conditions mandated that the project be completed by December 31, 2004.  *Amd. Compl.* at 8; *Purchase and Sale Agreement with Dallas Roof Gardens* at 4, Exhibit A to *Amd. Compl.* ("(a) DRG shall complete renovation work and obtain a Certificate of Occupancy for the 1217 Main Street Buidling by December 31, 2004.  The renovation work shall comply substantially with the plans for the renovations attached herein as Exhibit C. (b) DRG shall provide a minimum of 20,000 square feet of retail and restaurant space in the 1217 Main Street Building by December 31, 2004.")

When it became obvious to Plaintiff that the renovations would not be completed by the deadline, Plaintiff sought and obtained from the City a first extension, setting a new deadline of

---

[1]For an explanation of tax increment financing, see *El Paso County Cmty. Coll. Dist. v. City of El Paso*, 698 S.W.2d 248, 249 (Tex. App.—Austin 1985), *rev'd*, 729 S.W.2d 296 (Tex. 1986).

June 30, 2005. *Amd. Compl.* at 8–9. Plaintiff completed the exterior building renovations for the

project by the extended deadline, but the interior renovations were not timely completed. *See,*

*Id.* at 9.  In approximately August 2006, more than a year after the extended deadline, when the

interior renovations remained unfinished the City notified Plaintiff that the conditions to the TIF

contract had not been fulfilled and the conditional contract with the City was void. *Id.* at 9–10.

Plaintiff then applied for a second extension, on September 1, 2006, which received a unanimous

approval recommendation by the TIF Board on September 14, 2006. *Id.* at 4; *see also, Id.* at 9.

However, the City Council denied the second extension on November 8, 2006. *Id.* at 10–11.

### B. Procedural Background

Before the Court are two claims arising out of the above facts.  First, Plaintiff brings a

claim through 42 U.S.C. § 1983 alleging that Defendants discriminated against it on the basis of

race and national origin in violation its right to equal protection under the Fourteenth

Amendment. *Id.* at 13–14.  Second, Plaintiff brings a claim through 42 U.S.C. § 1981 alleging

that Defendants discriminatorily denied it the right to enter into contracts in the same matter as is

enjoyed by white citizens. *Id*. at 14–15.[2]

On July 9, 2009, Defendants filed the present motion seeking judgment on the pleadings

of Plaintiff's claims under Federal Rule of Civil Procedure 12(c) or, alternatively, summary

judgment pursuant to Federal Rule of Civil Procedure 56.

The issues have been briefed by the parties and the matters are ripe for determination.

---

[2]Additional claims have since been abandoned by Plaintiff and dismissed without prejudice. *Order Dated March 30, 2009* (Doc. #39); *Opinions Dated March 31, 2009* (Docs. #40 and 41).

## II.      Legal Standards

### A. 12(c) Judgment on the Pleadings

After the pleadings are closed, a defendant may file a Rule 12(c) motion for judgment on the pleadings based on a failure to state a claim on which relief may be granted.  *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

#### 1. Only the Pleadings may be Considered

In deciding a Rule 12(c) motion, a court must not consider any matter outside of the pleadings.  FED. R. CIV. P. 12(d); *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999). Otherwise, "the motion must be treated as one for summary judgment under Rule 56."  *Id.*  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, documents that a defendant attaches to either a 12(b)(6) or a 12(c) motion are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims.  *Id.*

#### 2. Judgment on the Pleading Legal Standard

A 12(c) motion is "subject to the same standard as a motion to dismiss under Rule 12(b)(6).  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  First, a court must accept all well-pleaded facts in the complaint as true.  *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).  However, a court "will not accept conclusory allegations, unwarranted deductions, or legal conclusions."  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citation and quotation omitted).

Next, a court must view the well-pleaded facts in the light most favorable to the plaintiff. *Sonnier*, 509 F.3d at 675.  However, a court "will not strain to find inferences favorable to the

[plaintiff]." *R2 Invs. LDC*, 401 F.3d at 642 (citation and quotation omitted).

Finally, a court must determine whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). The factual allegations of a complaint must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. A complaint need not contain detailed factual allegations, but a mere recital of the elements of the claim are insufficient. *Id.* (citation omitted); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Iqbal* 129 S.Ct. at 1950 (applying FED. R. CIV. P. 8(a)(2)).

### B. Summary Judgment Standard

In contrast to consideration of a motion for judgment on the pleadings, a court deciding a motion for summary judgment may consider, in addition to the pleadings, "any material that would be admissible or usable at trial." 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2721. The legal burdens on the movant and nonmovant at the summary judgment stage are discussed below.

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tenn. Gas*

*Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). "[T]he substantive law will identify which facts

are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute regarding a

material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in

favor of the nonmoving party. *Id.* When ruling on a motion for summary judgment, the court

must view all inferences drawn from the factual record in the light most favorable to the

nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*,

136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the

evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods*.,

*Inc*., 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55. As long as there appears to be

some support for the disputed allegations such that "reasonable minds could differ as to the

import of the evidence," the motion for summary judgment must be denied. *Anderson*, 477 U.S.

at 250.

Once the movant has made this initial showing, the party opposing the motion must come

forward with competent summary judgment evidence of the existence of a genuine fact issue.

*Matsushita*, 475 U.S. at 586. Conclusory allegations are not competent summary judgment

evidence, and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73

F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and

unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19

F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994). The party opposing summary

judgment is required to identify specific evidence in the record and to articulate the precise

manner in which that evidence supports her claim. If the nonmoving party fails to make a

showing sufficient to establish the existence of an element essential to its case and on which it

will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## II.    Analysis

Defendants have moved for both judgment on the pleadings under Rule 12(c) and summary judgment under Rule 56.  Defendants first argue that the Court should enter judgment on the pleadings in favor of Defendants because Plaintiff has failed to state a claim, under either sections 1983 or 1981, upon which relief may be granted.  Defendants next argue that the Court should grant summary judgment in favor of Defendants on both claims because Plaintiff has produced no evidence that Defendants intentionally discriminated against Plaintiff.  The Court addresses each in turn.

### A. 1983 Equal Protection Claim

#### 1. Section 1983 as a Vehicle for Equal Protection Claim

Plaintiff alleges that Defendant, while acting under color of state law, deprived Plaintiff of rights secured by the Equal Protection Clause of the Fourteenth Amendment.  *Amd. Compl.* at 13-14.  Section 1983 provides a civil remedy for violations, under color of state law, of a person's rights, privileges, or immunities arising under federal law.[3]  *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006).  Section 1983 does not itself create or establish any federally protected right.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (stating that section 1983, standing alone, is not a source of substantive rights; it provides the means by which federal

---

[3] The provision provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.

rights elsewhere conferred may be vindicated).  In the present action, section 1983 provides the method for Plaintiff to pursue its claim that Defendant violated the Equal Protection Clause of the Fourteenth Amendment, which commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.

### 2. Substantive Equal Protection Law

To state an equal protection violation based on a suspect class, a plaintiff must allege in its complaint (1) that it is a member of a protected class; (2) that a group similarly situated to the plaintiff: (a) exists, (b) falls outside of plaintiff's protected class, (c) received different treatment; and (3) the different treatment was motivated by purposeful discrimination.  *See, Samaad v. City of Dallas*, 940 F.2d 925, 940–42 (5th Cir. 1991).  In this case, Plaintiff alleges discrimination based on race or national origin.

### 3. Judgment on the Pleadings Analysis

The Court finds that Defendants are entitled to a Rule 12(c) judgment on the pleadings on Plaintiff's section 1983 equal protection claim because Plaintiff's complaint is deficient regarding the second of the three essential elements, *i.e.* it fails to allege the existence of a group similarly situated to Plaintiff.

#### a. *Parties' Arguments*

Defendants argue that Plaintiff's complaint fails to state a claim for violation of equal protection because it does not allege the existence of a similarly situated group that received more favorable treatment than Plaintiff.  *Defs. Mtn.* at 17–18.  Defendants note that the complaint does not allege that any other TIF applicant was granted a contract extension after "waiting over a year after a TIF agreement expired to request a second extension."  *Id.* at 17.

Plaintiff responds that its complaint contains sufficient facts to allege the existence of a similarly situated group.  *Plaintiff's Response in Opposition to Defendants' Motion* (Doc. #54), filed July 7, 2009 ("Pl. Resp.") at 14.  Plaintiff points to two groups that it alleges are similarly situated: (1) a broad group of all other TIF applicants, and (2) a more narrow group of all other TIF applicants who have received a "unanimously recommended extension" from the TIF Board.[4]  *See*, *Pl. Resp.* at 14–15.

### b. *Sufficiently Similar Test: Compare Apples to Apples*

The test for whether individuals or entitles are "similarly situated" for equal protection purposes does not easily lend itself to an articulable formula.  However, at least one circuit has explained:

> The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.  Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result.  Exact correlation is neither likely nor necessary, but the cases must be fair congeners.

*Barrington Cove Ltd. P'shp. v. R.I. Housing and Mortgage Finc. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001) (citations omitted).  More succinctly, the *Barrington Cove* court went on to state, "apples should be compared to apples."  *Id.; see also, Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003)(holding that although two businesses had some common criterion, they were not similarly situated for purposes of equal protection); *Cunningham v. Beavers*, 858 F.2d 269, 272 (5th Cir.

---

[4]Plaintiff's complaint does not point to any specific similarly situated groups, but merely states that its complaint "contains the following allegations with respect to all other groups, which would be inclusive of similarly situated groups:" *Pl. Resp.* at 14.  Plaintiff goes on to list five phrases, each a quotation from its complaint.  *Id.* at 14–15.  The Court has synthesized these five phrases to arrive at the two groups that Plaintiff alleges are similarly situated.

1988) ("The Equal Protection Clause...does not require classes of people different in fact or opinion to be treated in law as though they were the same").  Likewise, differences between entities based on "various factual traits, circumstantial nuances, and peculiarities" which make them amenable to disparate treatment may preclude a finding of similarity sufficient to support an equal protection claim.  *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 681 (7th Cir. 2005).

c. <em>Applied to This Case</em>

In this case, Plaintiff points only to the categories of "all other TIF applicants" or "all other TIF applicants who received unanimous TIF Board recommendations" as similarly situated groups.  However, these groups do not adequately account for what a person would reasonably see as distinctions in Plaintiff's case which make it amenable to disparate treatment, given the amount of funds requested and Plaintiff's demonstrated inability to meet deadlines, not once but twice.

In this case, the relevant factual traits include Plaintiff's request of a TIF grant of almost one million dollars to build a non-residential project.  *See*, *Purchase and Sale Agreement with Dallas Roof Gardens* at 4, Exhibit A to *Amd. Compl.* ("DRG shall provide a minimum of 20,000 square feet of retail and restaurant space..."); *Amd. Compl.* at 8 ("City agrees to provide the appraised value of the exterior improvements, valued at approximately $975,000.00).  The relevant circumstantial nuances and peculiarities related to Plaintiff's situation include the fact that Plaintiff had already been granted one extension, which it failed to meet.  Then, Plaintiff did not even apply for a second extension until more than a year after the first extended deadline passed and after it was notified by the City that it would not receive the TIF money.  *See, Amd.*

10

*Compl.* at 8–10 ("As the initial project completion date of December 31, 2004, drew near, DRG faced construction delays which made it impossible to comply with the December deadline...DRG sought and obtained an extension from the City to June 30, 2005...More than 13 months after the [extended deadline, when the project was still unfinished,] the City...notified DRG that it intended to void the TIF Contract...DRG submitted its [second extension] request in September 2006.")

"Exact correlation" between Plaintiff and the allegedly sufficiently similar group "is neither likely nor necessary," and the Court would not expect Plaintiff to point to a group that has all of these identical traits. *Barrington Cove*, 246 F.3d at 8. However, the Court finds that "a prudent person, looking objectively at" the situation would expect a sufficiently similar group to share at least a few of these or similar traits, nuances, or peculiarities. Since the Plaintiff's complaint fails to allege or identify any such group, the Court can do no more than speculate that some group might possibly exist. Such speculation is insufficient to survive a Rule 12(c) judgment on the pleadings, and Plaintiff's 1983 claim should be dismissed.

### 3. Summary Judgment Analysis

Defendant also presents two grounds for summary judgment on its section 1983 equal protection claim. First, Defendants urge that Plaintiff has presented no evidence that a similarly situated group was treated differently. *Defs. Mtn.* at 18. Second, Defendants urge that Plaintiff has no evidence that the reasons which City Council gave for denying a second deadline extension were a pretext for race or national origin discrimination. *Id.* The Court first briefly addresses the similarly situated group argument.

11

a. *Similarly Situated Element*

Plaintiff argues it produced evidence of similarly situated TIF applicants who were treated differently by showing that all other TIF applicants who received a unanimous TIF Board recommendations of approval were ultimately approved by the City Council.  *Pl. Resp.* at 15–16. Plaintiff next argues that, due to the TIF Board's queue system of allocating TIF money, all other TIF applicants who received funds (and not just those who received unanimous TIF Board recommendation) constituted a similarly situated group that received disparate treatment.  *Pl. Resp.* at 16–17.

As already discussed, at the summary judgment stage, a Court may consider both the pleadings and any materials that would be admissible at trial.  After considering the undisputed summary judgment evidence, the Court finds that Plaintiff has failed to put forward any evidence of a sufficiently similar class.

The groups Plaintiff points to as "similarly situated" are not sufficiently similar to Plaintiff to support an equal protection claim.  Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has raised no genuine issue of material fact that any group exists that applied for and was awarded a second extension from the City Council more than a year after the expiration of its first extension.  Plaintiff has raised no genuine issue of material fact that any non-residential project has been awarded any second extension, or moreover, a second extension where the amount of funds requested approaches one million dollars.

Since Plaintiff has raised no genuine issue of material fact as to the existence of a similarly situated class, Defendants are entitled to summary judgment on Plaintiff's section 1983 claims.

*b. Discriminatory Intent*

In addition, Defendants urge that Plaintiff's section 1983 claims fail on summary judgment because Plaintiff has not presented evidence sufficient to warrant a trial on the issue of Defendants' discriminatory intent. *Defs. Mtn.* at 20–21. The summary judgment analysis on the issue of Defendants' discriminatory intent is identical for the section 1983 and the section 1981 claims and is addressed later in this opinion.

*c. Summary Judgment Granted on the 1983 Claim*

Plaintiff has failed to meet its burden of production regarding evidence of a group similarly situated to Plaintiff that received more favorable treatment, and the Defendants have carried their burden of persuasion in convincing the Court that there is no genuine issue of material fact regarding a similarly situated group. Therefore, as an alternative to their entitlement to judgment on the pleadings, Defendants are also entitled to judgment in their favor as a matter of law on Plaintiff's equal protection claim. The Court now turns to Plaintiff's claim under 1981.

**B. Right to Contract Claim**

1. Substantive Right To Contract Law

Plaintiff next alleges that Defendants have violated 42 U.S.C. § 1981, which provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

13

The aim of section 1981 is to "remove the impediment of discrimination from minority citizens' ability to participate fully and equally in the market place." *Letap Hospitality, L.L.C. v. Days Inn Worldwide, Inc*., 2008 U.S. Dist. LEXIS 62442, * 19-20, (E.D. La., Aug. 7, 2008), citing *Turner v. Wong*, 363 N.J. Super. 186, 211 (2003).  Thus, section 1981 "provides protection against discriminatory conduct during and after the formation of a contract" in order to "prevent discriminatory enforcement of contracts and the impingement of the benefits, terms, privileges and conditions of a contractual relationship."  *Id.* at 20.

To state a claim for violation of the right to contract under section 1981, a plaintiff must allege in its complaint: (1) that the plaintiff is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute, including the making and enforcing of a contract.  *Causey v. Sewell Cadillac-Chevrolet, Inc*., 394 F.3d 285, 288-89 (5th Cir. 2004), citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997).

Given this legal backdrop, the Court first turns to Defendants' request for judgment on the pleadings.

### 2. Judgment on the Pleadings Analysis

In this case, Plaintiff clearly alleged in its complaint that (1) Obi Ibeto, Plaintiff's sole shareholder and controlling person, is black and therefore a member of a racial minority. *Amd. Compl*. at 5.  However, Defendants argue that the complaint makes only conclusory and therefore insufficient allegations that (2) the City intentionally discriminated based on race and (3) the discrimination concerned the making and enforcing of a contract.  *Defs. Mtn.* at 18.

Plaintiff responds that it pled sufficiently specific facts of both intentional discrimination

14

and interference with Plaintiff's right to contract.  *Pl. Resp*. at 17-19.  Plaintiff points to the

following allegations: Plaintiff is the first TIF applicant who had received a unanimous approval

recommendation by the TIF Board yet was denied the extension by the City Council; the City

Council vote to deny the extension was divided nine to five along racial lines with all four of the

African-American Council members voting in favor of the extension; and Plaintiff was willing to

present proof of permanent financing to the City Council, something not usually required of

other TIF applicants.  *Id.* at 17-18.

Upon review of the complaint, the Court cannot say that Plaintiff has failed to plead

"enough facts to state a claim to relief that is plausible on its face" against Defendant City

Council.  *Twombly*, 550 U.S. 544, 570.  Plaintiff has pled that its sole shareholder is a black

Nigerian national.  *Amd. Compl*. at 5. Plaintiff has also pled that the City Council denied the

extension of a contract for funding essential to the operation of his investment.  *Id.* at 11–12,

14–15.  Finally, Plaintiff has pled that it was denied the contract extension due to discriminatory

intent and has supported this claim against the City Council with supporting factual allegations

rather than relying on conclusory statements.  *Id.* at 10-12, 14–15.  The Court, accepting all well-

pleaded facts in the complaint as true and viewing these facts in the light most favorable to

Plaintiff, finds that Plaintiff has alleged enough facts to raise a right to relief against Defendant

City Council above the speculative level.

However, the Court also finds that Plaintiff has alleged no facts that raises its right to

relief above the speculative level against Defendant TIF Board.  In fact, Plaintiff has

affirmatively pled and relied upon Defendant TIF Board's unanimous *support* for Plaintiff's

second extension request.  *Id.* at 10.  Accepting all well-pleaded facts in the complaint as true

and viewing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted against Defendant TIF Board.

Accordingly, the Court finds that Defendants' motion for judgment on the pleadings on Plaintiff's claim under section 1981 should be denied as it relates to Defendant City Council and granted as it relates to Defendant TIF Board.  The Court now turns to the issue of whether summary judgment is proper because Plaintiff has failed to put forth evidence of Defendants' discriminatory intent.

### 3. Summary Judgment Analysis

Defendants argue that summary judgment is proper under Rule 56 because the record contains no evidence of Defendants' discriminatory intent.  A showing of discriminatory intent is necessary for both the section 1983 and 1981 claims.  A plaintiff must show "'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292–93 (1987)).  The plaintiff may show purposeful discrimination by either direct evidence or indirect evidence.

#### a. Direct Evidence

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions." *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993).   Plaintiff presents three items that it claims are direct evidence that the City Council denied Plaintiff's contract extension based on impermissible discrimination: (1) a

speech made by Dallas City Councilman Salazar at the November 8 City Council meeting[5] (*Pl. Resp.* at 19–20); (2) Mayor Laura Miller's comparison of Plaintiff's proposed TIF project with a different downtown business, Club Blue[6] (*Id.* at 21–24); and (3) the assertion that the City's "queue system of disbursing TIF grants provides evidence of discriminatory intent"[7] (*Id.* at 24).

---

[5]The quotation of Mr. Salazar's speech in Plaintiff's brief inserts both emphasis and bracketed commentary to Mr. Salazar's words. For an unedited version of Mr. Salazar's speech, see *Transcription of Excerpt Dallas City Council Meeting,* Appendix Part 2 of 5 to *Defs. Mtn.* (Doc. #49-3) ("Transcript") at 25–29. Mr. Salazar advocates that the City Council should have a "litmus test" that "triggers that we need to look at the financials [of a TIF applicant] and how in depth we look at those financials." *Id.* at 26–27. He urges that since there is no litmus test, the City Council may choose when to scrutinize the financials of a particular project, and states that this freedom could allow the City Council to scrutinize a project more carefully because "maybe he just doesn't look right, or maybe I don't really know what their [sic] doing, or maybe I suspect because of who they are that they're gonna bring certain things to an area that maybe we don't want." *Id.* at 27–28. Mr. Salazar's speech, if believed, proves nothing more than the fact that the City Council has no litmus test on when to look at the financials of a TIF project before granting an extension and that in Mr. Salazar's opinion, the lack of a litmus test leaves too much discretion with the City Council. Mr. Salazar's speech does not, without the aid of inferences or presumptions, prove that the City Council acted with discriminatory intent when denying Plaintiff's tardy second extension request and therefore is not direct evidence of such intent.

[6]Plaintiff also claims that Mayor Laura Miller's comparison of Plaintiff's application with Club Blue had no relevance to Plaintiff's TIF application other than the fact that both Club Blue and Plaintiff are operated by individuals with black skin. *Pl. Resp.* at 21–22. Plaintiff claims that the Mayor's reference to the "crime problems" with Club Blue implied a racial stereotype that businesses operated by black individuals often engage in criminal activity. *Id.* However, the actual evidence, the transcript of the City Council meeting, upon which Plaintiff relies does not support its allegations. *See Transcript*, at 10–13. Rather, the transcript shows that Mayor Miller's concerns centered around the fact that completion of Plaintiff's project was two years overdue and had a "litany of financial problems" including a history of tenant instability. *Id.* at 10. Mayor Miller continued, "[t]he last time we had a project like this was how we got [Club] Blue. We gave [the Club Blue property owners] a million dollars to do a restaurant and a high-end lounge upstairs. We never got the restaurant, and [due to tenant instability, the property owners] put in a bar [Club Blue] that now causes us crime problems..." *Id.* at 10–11. Mayor Miller's comments do not, without inferences or presumptions, prove that the City Council denied Plaintiff's second extension request due to discrimination based on race or national origin and are therefore not direct evidence of such discrimination.

[7] Plaintiff bases this argument on the foundation that, other than Plaintiff, no other developers in the TIF queue system were African American or black. *Pl. Resp.* at 24. Therefore,

17

None of the evidence Plaintiff points to is evidence which, if believed, would prove, without any inferences or presumptions, that the City Council's denial of the extension was based on discriminatory intent.  Since Plaintiff has failed to present direct evidence of Defendants' discriminatory intent, the Court now turns to the indirect evidence standard.

### b. Indirect Evidence

Alternatively, a plaintiff can defeat a defendant's motion for summary judgment by presenting indirect, circumstantial evidence of discrimination under the *McDonnell Douglas* burden-shifting framework.[8]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First,

---

Plaintiff reasons, when the Council denied Plaintiff's deadline extension, the money he could have received was instead distributed to someone else in the queue, and that person was necessarily outside of the protected class. *Id.* at 24–25.  In support of the proposition that the queue system discriminates against black individuals, Plaintiff relies solely on the deposition of Karl Stundins, Area Redevelopment Manager for the City of Dallas. *Id.* at 24; *See also*, *Id.* at 15–16.  However, Mr. Stundins's testimony actually undermines Plaintiff's argument. *See, Oral Deposition of Karl Stundins,* Exhibit 5 to *Appendix in Support of Pl. Resp.* (Doc. #55–4) at 5. Mr. Stundins testified that he is not aware of any other TIF projects that were *owned* by African Americans or blacks at the time of Plaintiff's extension request.  However, he also explains that most TIF applicant entities are not sole proprietorships owned by an individual, but are corporately owned and are represented in the TIF process by an individual.  He further explained that some of these corporately owned TIF applicants were *represented* in the TIF process by African Americans.  *Id.*  This undisputed evidence shows that, aside from Plaintiff, other developers in the City's queue system were African American, and other than Plaintiff's speculation, nothing suggests that the queue system distributed the financing Plaintiff could have received to someone outside of the protected class.

    [8]Plaintiff urges this Court to apply a modified *McDonnell Douglas* test under which a plaintiff may defeat a section 1981 motion for summary judgment by merely raising a genuine and material fact issue that either the proffered reason is pretextual or that the reason, while true, is only one reason for the conduct and another motivating factor is impermissible discrimination (the "mixed-motive test").  *Pl. Resp.* at 25.  As support, Plaintiff relies on *Rachid v. Jack in the Box*, 376 F.3d 305 (5th Cir. 2004), where the Fifth Circuit held that a mixed-motive analysis was appropriate under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 ("ADEA").  Plaintiff also cites *Richardson v. Monitronics Internatonal*, 434 F.3d 327 (5th Cir. 2005) where the Fifth Circuit held that a mixed-motive analysis is appropriate in certain Family Medical Leave Act cases.  However, Plaintiff's request to apply the mixed-motive test in this

the plaintiff must establish a prima facie case of discrimination.  *Id.*; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981).  Once the plaintiff establishes a prima facie case, the burden of producing a "legitimate, nondiscriminatory reason" for the action shifts to the defendant.  *Burdine*, 450 U.S. at 254.  Once the defendant articulates a nondiscriminatory reason for the complained-of action, the burden shifts back to the plaintiff to show the articulated reason is a mere pretext for impermissible discrimination.  *Id.* at 255.  The plaintiff may accomplish this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Id.*

Defendants also argue that, in the event the Court finds some indirect evidence of discriminatory intent, the Defendants have provided evidence of legitimate, nondiscriminatory reasons for denying Plaintiff's requested extension.  *Defs. Mtn.* at 21.  Summary judgment is proper, Defendants argue, because Plaintiff has  produced no evidence that the stated reasons are pretexts for discrimination based on race or national origin.  *Id.*

The Court assumes that Plaintiff made a prima facie showing of Defendants' discrimination and the burden to show legitimate reasons for the decision therefore shifted to Defendants. Here, Defendants met this burden by introducing evidence that the decision to deny the contract extension was based on legitimate, nondiscriminatory reasons.   Specifically,

---

case is undermined by the fact that the U.S. Supreme Court very recently held that the mixed-motive analysis does not apply to claims under the ADEA.  *Gross v. FBL Financial Services, Inc.*, No. 08-441 (___U.S.___, decided June 18, 2009).  Additionally, Plaintiff does not point to any cases applying a mixed-motive test to a 42 U.S.C. § 1981 case, and the Court has also been unable to locate any such cases.  Absent clear authority, the Court declines the invitation to modify the *McDonnell Douglas* standard for showing discriminatory intent in the section 1981 context.

Defendants' Motion for Summary Judgment summarizes the transcript from the City Council Meeting on November 8, 2006. *See, Defs. Mtn.* at 4–10.  City Council members noted that the nearly one million dollars requested by DRG was "an enormous amount of money for a tiny building," that the original approval for the project was passed by the City Council three and a half years earlier, and the project's completion was two years overdue.  *Id.* at 4; *Transcript* at 10. The Mayor compared the DRG project with another project, Club Blue, in which the City had similarly invested one million dollars for a restaurant and high end lounge and had ended up instead with a bar that caused crime problems.  *Defs. Mtn.* At 4; *Transcript* at 10–13.  The transcript notes that the Committee on Economic Development and Housing Committee had unanimously voted to recommend denial of Plaintiff's extension request and the reasons for that recommendation.  *Defs. Mtn.* at 6; *Transcription of Dallas City Council Meeting,* Appendix Part 3 of 5 to *Defs. Mtn.* (Doc. #49-4) ("Transcript II") at 4–5.

Given these nondiscriminatory reasons, the burden returns to Plaintiff to produce evidence that Defendants' reasons for denying Plaintiff's second extension request were a mere pretext for discrimination based on race or national origin.  The evidence Plaintiff offers fails to raise a genuine issue of material fact on the issue of Defendants' discriminatory intent to warrant a trial on the issue.

Plaintiff alleges that the different treatment between Plaintiff and other TIF applicants shows discriminatory intent.  *Pl. Resp.* at 27.  Plaintiff first points to the fact that its seven day extension was denied even though the City Council had previously granted a three year extension request for a different project, the "Lake Cliff" project.  *Id.*  However, the undisputed evidence in the record shows that Plaintiff's project and the Lake Cliff project were not

sufficiently similar to raise a fact issue.  The Lake Cliff project was for half the amount of

Plaintiff's project, and it included a residential component.  *Transcript*, at 14.  Further, Plaintiff

has presented no evidence that the Lake Cliff project had already received a prior extension, or

that it asked for a second extension more than a year after the deadline expired on the first

extension and only after it received notice from the City that the project would not be funded.

       Plaintiff next points to the undisputed fact that no other TIF applicant who had received

unanimous recommendation of approval by the TIF board had been denied an extension by the

City Council.  However, as already discussed, Plaintiff has failed to present any evidence

showing similarity between its project and the other projects regarding dollar amount, attributes

of the project, untimeliness of request, or the request for a second extension.  Therefore, this also

fails to raise a genuine issue of material fact for trial on the issue of Defendants' discriminatory

intent in denying Plaintiff's second extension request.

       The remaining evidence Plaintiff points to is either irrelevant or otherwise inadmissible

on the issue of defendant's discriminatory intent and therefore fails to raise a genuine issue of

material fact on the issue.[9]

---

[9]Plaintiff also points to the following facts as evidence of Defendants' discriminatory intent: (1) an email from a city staff member expressing intent to purchase the easement as early as August 8, 2005; (2) that the requested funds had already been allocated to Plaintiff's project; (3) by the November 8 City Council meeting, Plaintiff had already performed most of its material obligations to the City; and (4) opinions from William Blackburn, the attorney who represented Plaintiff before the City Council. *Pl. Resp.* at 27–28.  Most, if not all, of the opinions of Mr. Blackburn are not helpful to a determination of the facts already in issue and are therefore inadmissible opinion testimony by a lay witness under Federal Rule of Evidence 701.  To the extent the cited evidence is admissible, it fails to raise any genuine issue of material fact that the City Council's stated reasons for denying Plaintiff's request were a pretext for discrimination based on race or national origin.

21

IV.     **Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part

Defendants' Motion for Summary Judgment or for Judgment on the Pleadings (Doc. # 47) filed

July 9, 2009.  Regarding the section 1983 claim, the Court grants the Rule 12(c) Motion for

Judgment on the Pleadings and, in the alternative, grants the Rule 56 the Motion for Summary

Judgment.  Regarding the section 1981 claim against Defendant City Council, the Court denies

the Rule 12(c) Motion for Judgment on the Pleadings and grants the Rule 56 Motion for

Summary Judgment.  Regarding the section 1981 claim against Defendant TIF Board, the Court

grants the Rule 12(c) Motion for Judgment on the Pleadings and alternatively grants the Rule 56

Motion for Summary Judgment.

Accordingly, Plaintiff's 42 U.S.C. § 1983 claim for violation of equal protection under

the Fourteenth Amendment and its 42 U.S.C. § 1981 claim for violation of the right to contract

should be dismissed with prejudice.  The Court will enter a judgment consistent with this

opinion**.**

**SO ORDERED** on this **21st** day of **October, 2009**.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**